## EXECUTORS OF SANKEY v. THE HEIRS OF SANKEY.

1. An executor, by appearing and submitting to account, waives all objection to the citation.
2. A proceeding in the orphans court, instituted by husband and wife, to obtain the share of the wife in the estate, does not abate by the death of the wife; but the settlement may proceed at the instance of the husband as her administrator.
3. The decree, in such a case, must be in favor of the administrator, and it would be error in the court to make distribution thereof among the distributees of the deceased wife. Such distribution could only be made in a proceeding between the distributees and the administrator.
4. No decree can be rendered by the orphans court, unless the infant heirs or distributees are represented by a guardian *ad litem*.
5. The decree must be in favor of the infant, and not of his guardian.

ERROR to the Orphan's Court of Montgomery.

This was an application for the settlement of the estate of John S. Sankey, deceased.

The record states, that on the 3d January, 1843, application was made for a distribution of the estate by John Elsbury, in right of his wife, the widow of the deceased—whereupon the court cited the executors, James C. Sankey and James B. Stephens, to appear on the 15th February next, and make final settlement.

On that day the executors appeared and moved a continuance, which was granted.

No further proceedings were had until the 17th July, 1843, when Elsbury, in right of his wife, again moved the court, that the executors be required to make final distribution and settlement of the estate, and the court thereupon directed a citation to issue, requiring the executors to file their accounts and vouchers by the 31st instant, preparatory to a final settlement.

On the 7th July, to which day the matter had been continued, James B. Stephens, one of the executors, appeared and filed his accounts and vouchers, and publication was directed to be made, that on the 25th September ensuing, a final settlement would be made. The court then proceeded to state an account against James C. Sankey, and directed publication to be made, that un-

less he appeared and filed his account, on or before the 25th September then next, the account so stated would be made final.

On the day appointed for the final settlement, the executors appeared and pleaded that the plaintiffs ought not further to have or maintain these proceedings, because, since the last continuance of the cause, Patience Elsbury departed this life.

On the 30th October, 1843, the record recites, that John Elsbury, administrator of Patience, his wife, was made a party, and the executors and heirs being present in person and by their counsel, and objections being made by Stephens, one of the executors, to the account stated by the court against him, a jury was empannelled to try the issues between the parties, who found against the executor $989 86, and $41 37 1-2 costs.

The other executor, James C. Sankey, making no objection to the account stated against him, its allowance was decreed and ordered to be recorded.

The court then made the following decree. "There is in the hands of James C. Sankey, executor, the sum of $3,917, which, with the sum of $989 89, due by James B. Stephens, co-executor, amounts to $4,906 86, due said estate, by the said James C. Sankey and James B. Stephens, executors aforesaid. And on motion of John Elsbury, administrator in right of his wife, Patience, for a distribution of said personal estate, and it appearing to the satisfaction of the court, that the said Patience departed this life on the 20th September last, leaving two children minors, Ann Sankey and John Elsbury, and it appearing, that by a decree of this court, made the 15th of February, 1843, the executors aforesaid, were required to deliver over to John Elsbury and wife, Bob, Maria and children, agreeably to the provisions of the last will of the said John S. Sankey, deceased, it is now considered that the said John Elsbury, was in legal possession of the said negroes, before the demise of his wife, and is, therefore, entitled to the same.

And it is also appearing, that by the will of the deceased, Anne Sankey is entitled to the following negroes, viz: Washington, Bellar and Brister, and one hundred and seventy-five dollars, which said sum being taken from the $4,906 80, leaves $4,731 86, one half of which is $2,365 93, to which she is entitled as the legatee of her deceased father, and also the further sum of $1,182 96,

being one half of the heretofore undivided portion of the personal estate of her deceased mother, Patience Elsbury.

It is also considered, that John Elsbury, infant child of the said Patience, is entitled to the remaining half, viz: $1,182 96.

It is, therefore, decreed by the court, that James C. Sankey and James B. Stephens, executors of the last will and testament of John S. Sankey, deceased, deliver over to the legal representative of Anne Sankey, when known, the said negroes, Washington, Bellar and Brister, and also pay over to the said representative when known, the sum of $3,723 89, being her portion of said estate.

It is also ordered and decreed, that the said James C. Sankey and James B. Stephens, executors aforesaid, pay to the legal representatives of John Elsbury, when known, the sum of $1,182 89, being his portion of his deceased mother's estate.

Accompanying the record, is the will of John S. Sankey, deceased.

The following comprise the assignments of error:

1. In directing a citation without the wife being a party to the application.

2. In ordering the executors to deliver to Elsbury and wife the slaves bequeathed to her, there being no rule for a partial division.

3. In not abating the suit on the death of Mrs. Elsbury.

4. In making final settlement, without appointing guardians for the minors.

5. In decreeing to Elsbury the slaves devised to his wife after her death, and before he obtained possession.

6. In settling the estate of Mrs Elsbury and J. S. Sankey, at the same time.

7. In making a decree in favor of persons unknown.

8. In making no decree for costs.

ELMORE & COOK, for the plaintiff in error—cited Clay's Dig. 196, § 23, 24; id. 229, § 41; 3 Ala. 653; 4 id. 121; 4 Porter, 332; 2 S. & P. 373; 3 Stewart, 192, 375; 7 Porter, 270.

HAYNE, contra—relied principally on the fact, that all parties were present, and no exception taken. [7 Porter, 275.]

ORMOND, J.—The supposed error, in issuing the citation to the executors at the instance of the husband, if true, cannot avail. By the appearance of the executors, and submittting to account, they must be understood as waiving any objection to the citation.

We do not think there was error in permitting the settlement to proceed after the death of the wife, at the instance of her husband, as her administrator. It cannot be doubted that the intention of the legislature was, that no action or suit should abate when the cause of action survived. That it was intended that the act should extend beyond suits commenced in the ordinary mode, appears from the employment of the terms, "plaintiff *petitioner* or defendant." [Clay's Dig. 313, § 1.] But if the case was not within the letter, it is clearly within the intention of the act as the mischief of an abatement from the death of one of the parties, would be quite as great in this proceeding, as in the case of an ordinary suit in a court of common law.

The fact that the administrator of the wife was made a party, had no other influence on the proceeding, than to cause the decree for the share of the wife, to be made in favor of the administrator, instead of being made in favor of the husband and wife, if she had lived. The attempt of the court to distribute the esstate of the wife, upon this settlement of the estate of her former husband, was irregular and void. No judgment or decree could be made on this proceeding, which did not relate to the estate of J. S. Sankey. The estate of Mrs. Elsbury can only be distributed in a proceeding between her administrators and distributees.

It is not necessary, nor would it be proper at this time, to consider the effect or propriety of the decree made by the orphans' court on the 15th February, 1843, by which the executors were required to deliver to Elsbury and his wife, the slaves bequeathed to her. That question will be properly presented on the settlement of his administration of his wife's estate, if her distributees should insist that the slaves were not reduced into possession before the death of the wife.

The court also erred in proceeding to make a final settlement of the estate, without appointing a guardian *ad litem* for Anne Sankey, infant daughter of the deceased, if she had no general guardian.

There was also error in rendering a decree in favor of the future guardian of the minor, to be afterwards appointed. If a

guardian had been previously appointed, the decree should have been in favor of the infant.

The proceedings appear to be regular, down to . the ascertainment of the amount in the hands of the executors, the decree of the court only, is therefore reversed, unless the guardian of the minor, to be hereafter appointed, should desire a reinvestigation of the accounts of the executors. The decree of the orphans' court is, therefore, reversed, and the cause remanded for further proceedings, in conformity with this opinion.